UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FLAMINGO LLC,                                              NO. 11-CV-04862
                              Plaintiff,        (CM)(JCF)

       - against -

WENDY'S OLD FASHIONED HAMBURGERS
OF NEW YORK, INC., Successor -In-
Interest to Wenco Food Systems Corp.,
26 E. 23rd Street
New York, New York 10010,

                              Defendant.
----------------------------------------------------------------X


**PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**


Bruce Yukelson
WOLFE & YUKELSON PLLC
14 Vanderventer Avenue
Suite 101
Port Washington, NY 11050
(516) 767-7100
*byukelson@wolfeyukelson.com*

Attorneys for Plaintiff
Flamingo LLC

# TABLE OF CONTENTS

Preliminary Statement .................................................................................................... 1

Statement of Stipulated Facts ......................................................................................... 1

Argument:
    Wendy's Never Surrendered the Flamingo Lease
    as it Assigned the Lease to Slazer.................................................................................. 1

Conclusion ...................................................................................................................... 8

## TABLE OF AUTHORITIES

209-13 West 48th Realty Corp. v. Rose
Offset Printing Corp., 74 N.Y.S.2d 216 (1943),
affirmed 273 A.D. 754, 75 N.Y.S. 2d .................................................................................. 7

Altamuro v. Capoccetta, 212 A.D.2d 904,
622 N.Y.S.2d 155 (3d Dept. 1995) ..................................................................................... 4

Amyell Dev. Corp. v. Ikon Office Solutions, Inc.,
No. 2005/01087, 2006 WL 5363200
(N.Y. Sup. Ct. Dec. 13, 2006) ............................................................................................ 4

Ayen v. Schmidt, 141 N.Y.S. 938 (1913) ................................................................................. 7

Bay Plaza Estates v. N.Y. Univ., 257 A.D.2d 472,
683 N.Y.S.2d 538 (1st Dept. 1999) ..................................................................................... 5

Bedford v. Terhune, 30 N.Y. 453 (1864) .................................................................................. 3

Brock Enters., Ltd. v. Dunham's Bay Boat Co.,
292 A.D.2d 681, 738 N.Y.S.2d 760 (3d Dept. 2002) ......................................................... 5

Centurian Dev. Ltd. v. Kenford Co., Inc.,
60 A.D.2d 96, 400 N.Y.S.2d 263 (4th Dept. 1977) ............................................................ 5

Coe v. Hobby, 72 N.Y. 141, 145 (1878) ................................................................................... 3

Gillette Bros. v. Aristocrat, 239 N.Y. 87, 90 (1924) ................................................................ 7

Gotlieb v. Taco Bell Corp.,
871 F.Supp. 147 (E.D.N.Y. 1994) ...................................................................................... 5

Hodgkiss v. Dayton-Brower Co.,
93 Misc. 109, 156 N.Y.S. 909 (2d Dept. 1915) .................................................................. 6

Lynch v. Joseph, 288 A.D. 367,
240 N.Y.S. 176 (4th Dept. 1930) ........................................................................................ 7

New Amsterdam Casualty Co. v. National
Union Fire Ins. Co. of Pittsburgh, P.A.,
266 N.Y. 253 (1935) ........................................................................................................... 6

Riverside Research Inst. v. KMGA, Inc.,
  68 N.Y.2d 689 (1986) .......................................................................................................... 6

South Bay Ctr. v. Butler Herrick & Marshall,
  250 N.Y.S.2d 863 (1964) ..................................................................................................... 7

Stewart v. Long Island R. Co., 102 N.Y. 601 (1886) ........................................................... 6

Other Authorities:

2 Rasch, Landlord and Tenant (4th Ed.)

Plaintiff, Flamingo LLC, ("Flamingo") respectfully submits this memorandum of law in opposition to defendant's motion for summary judgment and in support of plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Wendy's was enticed by a developer ("Slazer") to close and vacate its fast food restaurant located at 26 E. 23rd Street, New York, New York, the "Flamingo Property", for the sum of $2.25 million. Thereafter, Slazer contracted to purchase the Flamingo Property from Flamingo subject to Wendy's lease. Prior to the scheduled closing, Wendy's received the $2.25 million and assigned its lease to Slazer, believing that the lease would be terminated at the closing. The transaction never closed, and the lease was never terminated. Accordingly, Wendy's is liable for its obligations under the lease.

## STATEMENT OF STIPULATED FACTS

Wendy's "Summary of Undisputed Facts" is incomplete and not entirely accurate. A true and complete Statement of Stipulated Facts contained in the Pre-Trial Order is contained in the Plaintiff's Rule 56.1 Statement filed with this Court on May 25, 2012.

## ARGUMENT

**WENDY'S NEVER SURRENDERED OR TERMINATED THE FLAMINGO LEASE, AS IT ASSIGNED THE LEASE TO SLAZER.**

That prior to executing a contract of sale to purchase the Flamingo Property, Slazer entered into an agreement with Wendy's wherein it would terminate its lease upon the completion of the purchase of the Flamingo Property by Slazer from Flamingo. Upon such sale, a termination agreement would be delivered to Slazer, the new owner of the Flamingo Property, and Wendy's was to be paid the sum of $2.25 million. Flamingo was not a party to said agreement. (Yecies Exhibit "G")

1

Thereafter, Slazer entered into the contract of sale with Flamingo to purchase the Flamingo Property subject to Wendy's lease. (Yecies Exhibit "J") (See ¶R11(a)(xi) of the Rider to Contract of Sale) Paragraph R27 of the rider to said Contract of sale provided that Slazer would pay at closing all arrearages under the lease. Thus, both parties recognized the continuing existence of the lease until the time of closing. Paragraph R20(c) of the Rider to the Contract of Sale made it perfectly clear that Flamingo and Slazer understood that Wendy's did not possess the right to terminate the lease to the Flamingo Property until closing and that any termination or surrender of the lease of the Flamingo Property to Slazer by Wendy's was without the consent of Flamingo.

On January 29, 2008, Wendy's executed the First Amendment of Agreement to Terminate Lease with Slazer, whereby Wendy's agreed to vacate the Flamingo Property at that time, even though the closing between Flamingo and Slazer had not yet occurred, and Slazer had agreed to assume all obligations in relation to the lease of December 7, 2007, until such time that Slazer purchased the Flamingo Property. (Stipulated Fact No. 50) (Yecies Exhibit "M"). According to Michael O'Kane, Wendy's in-house counsel who handled the transactions between Wendy's and Slazer, Wendy's had assigned its lease to Slazer. (O'Kane transcript p. 26, line 20 - p. 27, line 10, with correction page - Shrem Exhibit "2") The Court will note that the transcription of page 27, line 3 is not entirely accurate.

As an exhibit to the First Amendment of Agreement to Terminate Lease dated January 29, 2008, Wendy's signed a waiver of its right of first refusal to purchase the Flamingo Property (Stipulated Fact No. 51), and Slazer confirmed that it had received possession of the Flamingo Property and Wendy's (which had since ceased operations and vacated the property) confirmed that it delivered the keys to Slazer. (Stipulated Fact No. 52) Keys were never delivered to Flamingo. Said Amendment also set forth that "Wendy's does not object to the Contract Purchaser with the permission of the Owner to begin construction and/or demolition on areas of the premise after the payment of the Termination Fee." (Stipulated Fact No. 53) Around January 29, 2008, when the Amendment was executed, Wendy's received a $2.25 million payment as

consideration for assigning its lease to Slazer and executing a termination of lease, which termination of lease would become effective only at the closing of the Flamingo property. Wendy's did not intend to ever return to the premises according to its Director of Real Estate, Andrew Taves. (Stipulated Fact No. 57)

As set forth in the deposition transcript of Michael O'Kane, Esq., it was his understanding that Wendy's termination of lease with Slazer was supposed to be recorded at closing and was not effective until recorded. (O'Kane transcript, p. 38, lines 7 - 24; p. 64, line 13 - p. 65, line 14; p. 73, line 10 - p. 74, line 13 - Shrem Exhibit "2")

It is of great significance that, Mr. O'Kane, an experienced real estate attorney, admitted that he wanted to make sure that Slazer paid Wendy's obligations under the lease until a closing had occurred between Slazer and Flamingo. (O'Kane transcript, p.50, line 21 - p.51, line 10; p.51, line 23 - p. 52, line 8; p. 57, line 13 - p. 58, line 17 - Shrem Exhibit "2") If the lease was already terminated, Wendy's would have no longer any interest in following up whether Slazer paid Wendy's obligations under the Flamingo Lease. In addition, Mr. O'Kane made inquires in March 2010, and as late as June 2010, to ascertain whether the closing occurred between Flamingo and Slazer. (Stipulated Fact Nos. 86 and 129) These inquiries demonstrate that Wendy's clearly understood the lease had not been terminated and that Wendy's was still on the hook.

**Surrender of Lease**

A surrender of a lease is the restoring and yielding up of an estate for years to him who has the immediate estate in reversion or remainder, whereby the lessor estate is merged in the reversion or remainder by agreement or by operation of law. 2 Rasch, Landlord and Tenant (4th Ed.) §26.1, citing Coe v. Hobby, 72 N.Y. 141, 145 (1878) and Bedford v. Terhune, 30 N.Y. 453 (1864).

It was acknowledged by Michael O'Kane, Esq., Wendy's in-house counsel, that a surrender or termination agreement is made between a landlord and a tenant. (Shrem Exhibit "2" - O'Kane transcript, p.7, lines 10-16) Once Wendy's assigned its lease to Slazer, Wendy's was no

3

longer the tenant and, therefore, possessed no right to surrender the lease. Likewise, as Wendy's was no longer the tenant, the lease could not be deemed surrendered by operation of law, as such a surrender required inconsistent acts by both Flamingo, the landlord and Slazer, the tenant. Once Wendy's vacated the and assigned the lease, Slazer became the tenant. Accordingly, Wendy's legal authorities do not apply herein.

As stated previously, pursuant to the contract of sale, Slazer was required to pay all of Wendy's arrearages under the lease until closing. Certainly, Flamingo recognized the validity of the assignment of lease to Slazer and, until Slazer failed to close, expected to receive its rent arrears from Slazer. It is respectfully submitted that buildings in New York City are sold every day subject to the leases of tenants. Thus, Flamingo's attempt to sell the property to Slazer is not an indication that it wished to terminate Wendy's lease. As stated hereinbefore, Flamingo never recognized any purported termination to Slazer. (Stipulated Facts No. 42 and 43)

If the Flamingo Property was sold to Slazer, it would have been subject to Wendy's lease, which could then be terminated by Slazer, the new owner. Surely, Flamingo was not releasing a Triple-A tenant from its lease if the deal did not close.

**Wendy's Authorities Do Not Support Its Claim of Surrender**

It is respectfully submitted that the authorities cited by Wendy's have fact patterns which are not similar to the case at bar. In <u>Altamuro v. Capoccetta</u>, 212 A.D.2d 904, 622 N.Y.S.2d 155 (3d Dept. 1995), the landlord and tenant reached an oral agreement regarding the termination of the lease, wherein the defendant vacated and gave the keys to the plaintiff. In this matter, Wendy's unilaterally assigned the lease to Slazer, who thereby took possession of the premises. There was no oral understanding of a surrender or keys returned. Here, Wendy's was specifically advised that the lease would be valid until the termination agreement could be filed by Slazer, the contract purchaser.

In <u>Amyell Dev. Corp. v. Ikon Office Solutions, Inc.</u>, No. 2005/01087, 2006 WL 5363200 (N.Y. Sup. Ct. Dec. 13, 2006), there was an implication to surrender an existing lease

upon the giving of a second lease. Here, Wendy's lease was assigned by Wendy's to a third party without the landlord's consent. It should be pointed out that the court in <u>Amyell</u> also held that the assignment by plaintiff "did not serve as release of defendant's liability for rent under the lease" as "neither the consent of the landlord to the assignment of the lease, nor the acceptance of rent from an assignee from the original tenant, releases the latter from its covenant to pay the rent." The court stated that there must be an express agreement by which the lessee was released from its covenant to pay the rent or facts shown from which such agreement can be implied.

In <u>Bay Plaza Estates v. N.Y. Univ.</u>, 257 A.D.2d 472, 683 N.Y.S.2d 538 (1st Dept. 1999), the landlord, after being told the tenant would be vacating the premises, demanded that the keys be returned, and changed the locks. Here, possession of the premises was continued by Slazer, the assignee of the lease. No demand for keys was made by Flamingo, nor were locks changed by Flamingo.

In <u>Brock Enters., Ltd. v. Dunham's Bay Boat Co.</u>, 292 A.D.2d 681, 738 N.Y.S.2d 760 (3d Dept. 2002), the landlord accepted the keys and then utilized the premises owned by its own boat business, which began paying rent for the property. Clearly, this was a situation where the landlord utilized the premises in a manner inconsistent with the tenant's rights under the lease. Here, Wendy's rights under the lease were actually transferred by Wendy's to Slazer, and since the assignment did not require the landlord's consent, Flamingo could not object.

In <u>Centurian Dev. Ltd. v. Kenford Co., Inc.</u>, 60 A.D.2d 96, 400 N.Y.S.2d 263 (4th Dept. 1977), there was a question as to whether the landlord's reletting the premises after the tenant had vacated was done in hostility to the tenant's rights. The court held that "a surrender by operation of the law would be manifest if the tenant abandoned the demised premises and the landlord created another estate inconsistent with the abandoning tenant's rights under the lease." This did not happen between the parties herein, as Wendy's merely assigned the lease to a third party without the consent of Flamingo.

In <u>Gotlieb v. Taco Bell Corp.</u>, 871 F.Supp. 147 (E.D.N.Y. 1994), the court found

that the landlord's actions were consistent with its intent to accept the defendant's property and re-let it for its own benefit. Here, the landlord could not have re-let the premises for its own benefit as Slazer was in possession as Wendy's assignee, and, due to its present condition, still has been unable to re-let the premises. It is noteworthy that <u>Gotlieb</u> held that mere attempts to re-let are insufficient to establish an acceptance of a surrender by operation of law.

In <u>Hodgkiss v. Dayton-Brower Co.</u>, 93 Misc. 109, 156 N.Y.S. 909 (2d Dept. 1915), the issue to be determined was whether certain alterations to the premises were such that prevented the tenant from returning, thereby evidencing an intent to accept the surrender by the tenant. Here, it was Wendy's assignee who performed the work and was the tenant who had the right to occupy the premises. In addition, Wendy's gave Slazer the right to demolish the premises, if and only if, Flamingo did not object. Furthermore, not only did Wendy's have no intention to return to the property, it had no legal right to do so since it assigned its rights under the lease to Slazer.

In <u>Riverside Research Inst. v. KMGA, Inc.</u>, 68 N.Y.2d 689 (1986), the tenant gave written notice to the plaintiff landlord that it was about to vacate the premises, and the landlord physically assisted the tenant in leaving the premises. The court held that these were acts which were consistent with a surrender. Here, there is no allegation that Wendy's even asked Flamingo to be relieved of its obligations under the lease. In actuality, Wendy's counsel was advised in several e-mails that, notwithstanding any agreement with Slazer, Flamingo would still look to hold Wendy's liable under the lease, and Wendy's understood that the termination agreement with Slazer would be effective only upon the closing of the Flamingo Property.

**Assignment of Lease**

An assignment of a lease is a transfer by tenant of his entire estate or interest, in the whole or in a part, of the leased premises [2 Rasch, Landlord and Tenant (4th Ed.), citing <u>New Amsterdam Casualty Co. v. National Union Fire Ins. Co. of Pittsburgh, P.A.</u>, 266 N.Y. 253 (1935); <u>Stewart v. Long Island R. Co.</u>, 102 N.Y. 601 (1886)]. To make an assignment effective, it is not necessary that the assignee go into actual possession but, to constitute a complete and valid

assignment, a delivery and acceptance of the assignment are essential [2 Rasch, Landlord and Tenant (4th Ed.) §9.3), citing <u>Lynch v. Joseph</u>, 288 A.D. 367, 240 N.Y.S. 176 (4th Dept. 1930)]. Here, not only did Slazer take possession of the property, but it acknowledged in writing that it was responsible for all of the obligations under the lease. (Yecies Exhibit "M") Indeed, as set forth on Page 4 of Wendy's Memorandum of Law, "Slazer agreed to assume all responsibilities for rent on the Flamingo Property from the time Wendy's closed its restaurant to the closing of the sale of the Flamingo Property".

It is simply disingenuous for Wendy's to claim that the construction performed by Slazer at the time when Wendy's was no longer the tenant would have prevented Wendy's from operating a restaurant on the premises. In actuality, Wendy's gave permission to Slazer to demolish the premises, but required the consent of Flamingo. (Yecies Exhibit "M") Only with an assignment of lease could Wendy's have given Slazer such rights. In addition, Wendy's was never coming back to the premises, as testified by Andy Taves, Wendy's real estate director. (Stipulated Fact No. 57) Furthermore, by assigning the lease, it relinquished all of its rights of possession of the property.

### **Wendy's Is Liable Under the Lease**

The liability of a tenant on its express covenants contained in the lease rests on the privity of contract which arises out of the lease agreement between him and his landlord. When a tenant assigns his lease, it does not affect this privity of contract--that continues. Therefore, when the tenant assigns his lease, he continues to be personally liable on all of the express covenants on the lease on his part, notwithstanding the assignment. Thus, a tenant who assigns his lease continues to be personally liable not only for the breaches of the lease committed by him before the assignment, but also for all breaches of the lease committed after the assignment by his immediate, or even any subsequent, assignee of the lease. [2 Rasch, Landlord and Tenant (4th Ed.) §9.18] <u>Gillette Bros. v. Aristocrat</u>, 239 N.Y. 87, 90 (1924) (See <u>South Bay Ctr. v. Butler Herrick & Marshall</u>, 250 N.Y.S.2d 863 (1964); <u>Ayen v. Schmidt</u>, 141 N.Y.S. 938 (1913); <u>209-13 West 48th Realty Corp. v. Rose Offset Printing Corp.</u>, 74 N.Y.S.2d 216 (1943), affirmed 273 A.D. 754, 75

N.Y.S. 2d 774) Accordingly, the assignment of the lease to Slazer does not negate Wendy's contractual liability to Flamingo.

It is respectfully submitted that in January 2007 Wendy's believed that, after paying Flamingo a downpayment of $1,375,000 and paying Wendy's an assignment fee of $2.25 million, Slazer would close title to the Flamingo Property. (O'Kane Transcript p. 32, lines 13-16 - Shrem Exhibit "2") Wendy's was wrong.

Only at such closing would Wendy's termination of lease become effective. In short, Wendy's assigned its lease to Slazer, Slazer went bankrupt, never closed, and the termination of lease never became effective. Thus, Wendy's is liable for the obligations under the lease. As a result, Flamingo is entitled to damages in the sum of $2 million.

## **CONCLUSION**

For the foregoing reasons, Flamingo requests that Wendy's motion for summary judgment be denied and that Flamingo's cross motion for summary judgment be granted and award Flamingo the sum of $2 million.

Dated: Port Washington, New York
May 26, 2012

/s/ Bruce Yukelson
*byukelson@wolfeyukelson.com*
WOLFE & YUKELSON PLLC
14 Vanderventer Avenue
Suite 101
Port Washington, NY 11050
(516) 767-7100

Attorneys for Plaintiff
Flamingo LLC