UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLAMINGO LLC,<br><br>                    Plaintiff<br><br>            v.<br><br>WENDY'S OLD FASHIONED<br>HAMBURGERS OF NEW YORK, INC.,<br><br>                    Defendant. | Case No. 11-cv-4862 (CM) (JCF)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT WENDY'S OLD FASHIONED HAMBURGERS OF NEW YORK, INC.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Douglass B. Maynard
Jacqueline G. Yecies
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
dmaynard@akingump.com
jyecies@akingump.com

*Counsel for Defendant Wendy's Old Fashioned
Hamburgers of New York, Inc.*

## TABLE OF CONTENTS

                                                         **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.      Flamingo Effectively Concedes that Wendy's Surrendered the Lease and that the Surrender Was Accepted ........................................................................................ 1

II.     Flamingo's Assignment Argument Fails .............................................................. 4

        A.      There is No Factual Support for the Alleged "Assignment" ..................... 4

        B.      Even If Wendy's Did "Assign" the Lease to Slazer, Wendy's Still Is Not Liable to Flamingo .................................................................................... 5

III.    Flamingo's "Cross Motion" for Summary Judgment Is Untimely ....................... 9

CONCLUSION ............................................................................................................................. 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*290-13 W. 48th Realty Corp. v. Rose Offset Printing Corp.*,
   74 N.Y.S.2d 216 (N.Y. Sup. Ct. 1947) ................................................................................9

*4400 Equities, Inc. v. Dhinsa*,
   52 A.D.3d 654, 826 N.Y.S.2d 512 (2d Dep't 2008) .............................................................7

*Altamuro v. Capoccetta*,
   212 A.D.2d 904, 622 N.Y.S.2d 155 (3d Dep't 1995) ...........................................................7

*Ayen v. Schmidt*,
   141 N.Y.S. 938 (2d Dep't 1913) ........................................................................................8, 9

*Bay Plaza Estates v. N.Y. Univ.*
   257 A.D.2d 472, 683 N.Y.S.2d 538 (1st Dep't 1999) ..........................................................3

*Gillette Bros. v. Aristocrat Rest.*,
   239 N.Y. 87 (1924) ..............................................................................................................8

*Gotlieb v. Taco Bell Corp.*,
   871 F. Supp. 147 (E.D.N.Y. 1994) ...................................................................................3, 7

*Mid Valley Assoc., LLC v. Foot Locker*,
   No. 603069/02, 2005 WL 6237373 (N.Y. Sup. Ct. Apr. 12, 2005), *aff'd*, 28 A.D.3d
   206 (1st Dep't 2006) ........................................................................................................ 7, 9

*Quoka v. City of W. Haven*,
   No. 02-7675, 2003 WL 21223422 (2d Cir. May 22, 2003) .................................................5

*Riverside Research Inst. v. KMGA, Inc.*,
   68 N.Y.2d 689 (1986) .......................................................................................................2, 3

*S. Bay Ctr. v. Butler, et al.*,
   250 N.Y.S.2d 863 (N.Y. Sup. Ct. 1964) ..............................................................................7

*Singer v. Boychuk*,
   194 A.D.2d 1049, 599 N.Y.S.2d 680 (3d Dep't 1993) ................................................5, 6, 9

*Stroll v. Epstein*,
   818 F. Supp. 640 (S.D.N.Y. 1993), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) .................................5

*Ull v. Lerner*,
   308 A.D.2d 396, 764 N.Y.S.2d 432 (1st Dep't 2003) ..........................................................5

*Zinwell Co. v. Ilkovitz*,
  144 N.Y.S. 815 (1st Dep't 1913) ...................................................................................5

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(b) .......................................................................................................................9

FED. R. CIV. P. 56(c)(2) ..................................................................................................................5

Defendant Wendy's Old Fashioned Hamburgers of New York, Inc. respectfully submits this reply memorandum of law in further support of its motion for summary judgment, and in opposition to Plaintiff Flamingo LLC's so-called "cross motion" for summary judgment.

## PRELIMINARY STATEMENT

Remarkably, Flamingo's response papers serve to further demonstrate that Wendy's motion for summary judgment should be granted. Flamingo does not contest any of the central, controlling facts and indeed affirms many of them. It is beyond dispute that for years after Wendy's vacated Flamingo's building in January 2008, both parties acted inconsistently with the landlord-tenant relationship and, therefore, the lease was terminated by operation of law.

Flamingo attempts to side-step the doctrine of surrender and acceptance by asserting that Wendy's "assigned" the lease to the developer Slazer in January 2008 and thus could not have surrendered the lease. This argument is factually unsupported and, moreover, does not address the essential aspect of surrender and acceptance. That is, because both parties acted inconsistently with the landlord-tenant relationship, the lease was abandoned and all obligations under the lease are terminated.

Finally, Flamingo's attempt to shoe-horn an untimely "Cross Motion for Summary Judgment" into its opposition brief is procedurally improper and should be rejected by the Court.

## ARGUMENT

### I. Flamingo Effectively Concedes that Wendy's Surrendered the Lease and that the Surrender Was Accepted

Flamingo does not – and cannot – dispute the legal proposition that the doctrine of surrender and acceptance provides that a lease is terminated by operation of law if the parties act in a manner inconsistent with the continuing existence of the landlord-tenant relationship. *See,*

*e.g., Riverside Research Inst. v. KMGA, Inc.*, 68 N.Y.2d 689, 691-692 (1986).  Nor does Flamingo contest the fundamental facts that require the application of that doctrine to this case.

Flamingo admits that by January 2008, Wendy's had ceased the operation of its restaurant, vacated the building, and stopped paying rent or carrying out any other obligations under the lease.  (*See* Wendy's Statement of Undisputed Facts Pursuant to Local Rule 56.1 In Support of Its Motion for Summary Judgment ("Wendy's Rule 56.1 Stmt.") ¶¶ 23, 24, 29, 35-36 – all uncontested by Flamingo).  Thus, there is no dispute that Wendy's surrendered the lease.

Nor does Flamingo dispute that it accepted the surrender of the lease by acting in a manner fundamentally inconsistent with a continued Wendy's tenancy.  Flamingo admits that it wanted to sell its building, discussed with Wendy's the possibility of Slazer taking over the lease in connection with the purchase of the Flamingo Property, and approved Shapiro's buyout of Wendy's lease, including the payment of $2.25 million in consideration for Wendy's agreement to terminate the lease, close its restaurant, and vacate the property.  Flamingo further admits that after Wendy's departure, Slazer began construction work on the property, and Flamingo received monthly payments from Slazer exceeding Wendy's former rental payments.  Flamingo also concedes that it made no effort to notify Wendy's – who had long since departed –  regarding either the construction work on the property or its receipt of payments from Slazer.  (*See* Wendy's Rule 56.1 Stmt. ¶¶ 7, 11, 13-15, 17, 34-36, 37-39, 41-43, 45, 51, 56-59  – all uncontested by Flamingo).

Indeed,  Abe Shrem, the principal of Flamingo, submitted an Affidavit affirming that:

- o With Flamingo's full knowledge, Slazer and Wendy's signed a Termination of Lease Agreement.  (Affidavit in Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross Motion for Summary Judgment ("Shrem Aff.")  ¶ 2.)

- Flamingo signed an agreement to sell its building to Shapiro, allowed Shapiro and his Slazer development entities to use the property for more than two years, and received more than $1.4 million in payments, as well as a $1,375,000 down payment, from Shapiro. (*Id.* ¶¶ 2, 4, 5, 6, 16.)

- Flamingo knew that Wendy's ceased operations on the property in December 2007 and vacated the premises soon thereafter. (*Id.* ¶ 3.)

- Flamingo knew and did not object to Slazer paying Wendy's a termination fee to vacate the property prior to the closing between Shapiro and Flamingo. (*Id.* ¶ 3.)

- Flamingo permitted Slazer to do preparatory construction work on the building so that McDonald's could move into the space previously occupied by Wendy's. (*Id.* ¶ 4.)

- Flamingo was aware of – and did not prevent – Slazer from "demolish[ing] the upper two floors of the Flaming Property," "ripp[ing] out all of the improvements on the first and second floor," and effectively "gutt[ing]" the building, rendering it a "partial shell." (*Id.* ¶¶ 4, 13, 17.)

- For two-and-a-half years after Wendy's departure, Flamingo never contacted Wendy's to pay rent or real estate taxes. (*Id.* ¶¶ 6, 9.)

- In the interim, Flamingo has made efforts to sell or lease the premises to other potential buyers/tenants. (*Id.* ¶ 17.)

- It was not until Shapiro's development companies went into bankruptcy that Flamingo – after two-and-a-half years of silence – made a putative rent "demand" to Wendy's. (*Id.* ¶ 12.)

It is beyond dispute that the parties' conduct was "so inconsistent with the landlord-tenant relationship that it indicates their intent to deem the lease terminated." *Riverside Research*, 68 N.Y.2d at 691-692; *see also Bay Plaza Estates v. N.Y. Univ.* 257 A.D.2d 472, 473, 683 N.Y.S.2d 538, 538 (1st Dep't 1999); *Gotlieb v. Taco Bell Corp.*, 871 F. Supp. 147, 152 (E.D.N.Y. 1994).

Flamingo's attempt to factually distinguish the cases cited by Wendy's is futile. (Plaintiff's Amended Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross Motion for Summary Judgment ("Opp'n Br.") at 4-6.) These cases stand for the proposition – which Flamingo does not dispute – that a court can

3

infer from the parties' conduct their intent to abandon a lease. Naturally, the facts underlying application of the doctrine of surrender and acceptance are different in each case. The undisputed facts here, while not identical to other cases, leave no question that both parties intended to abandon the lease. Indeed, in this case, that intention was plainly expressed. Shrem testified that the purpose of the transactions between Flamingo, Shapiro, and Wendy's was to have Wendy's vacate so that Slazer could begin construction to prepare the building for a McDonald's to move in. (*See* Defendant Wendy's Memorandum of Law In Support of Its Motion For Summary Judgment ("Moving Br.") at 14-16.) Minor factual differences between the facts of this case and the cases cited by Wendy's do nothing to undermine the application of the surrender and acceptance doctrine.

## II. Flamingo's Assignment Argument Fails

In an effort to avoid the doctrine of surrender and acceptance, Flamingo raises a new – and fundamentally defective – argument that Wendy's "assigned" its lease to Slazer.

### A. There is No Factual Support for the Alleged "Assignment"

The factual record does not support the proposition that Wendy's and Slazer executed an "assignment." As Flamingo recognizes, the agreement at issue was a "Termination Agreement," which was unambiguous both in title and content. Flamingo itself states that, "Slazer entered into an agreement with Wendy's wherein it would *terminate* its lease . . ." (Opp'n Br. at 1) (emphasis added). According to Shrem's Affidavit, "Slazer entered into an agreement with Wendy's wherein Wendy's was to receive the sum of $2,250,000 to *terminate* its lease . . ." (Shrem Aff. ¶ 2) (emphasis added).

Flamingo offers no admissible evidence to support its new assignment theory, and its attempt to make selective use of testimony from Michael O'Kane, Wendy's former in-house counsel, should be rejected. Significantly, Flamingo fails to cite O'Kane's testimony that the

4

lease was *terminated* by operation of law, releasing Wendy's from any further obligations, due to the parties' conduct which was inconsistent with a continued Wendy's tenancy. (*See* accompanying Reply Affidavit of Jacqueline G. Yecies In Further Support of Defendant's Motion for Summary Judgment, Ex. A, O'Kane Dep. 20:11-21:5; 23:15-24:3; 27:25-28:12; 55:2-15; 58:25-59:5; 60:21-61:22). In any event, the O'Kane testimony that Flamingo cites regarding the supposed intent of the parties when they entered into the termination agreements is barred by the parol evidence rule because the Termination Agreement and First Amendment are clear and unambiguous. (*See* Affidavit of Jacqueline G. Yecies in Support of Defendant's Motion for Summary Judgment ("Yecies Aff."), Exs. G, M). Flamingo does not even attempt to argue otherwise. Accordingly, the Court need only review the termination agreements themselves in determining Wendy's summary judgment motion. *See* FED. R. CIV. P. 56(c)(2); *see also Stroll v. Epstein*, 818 F. Supp. 640, 643 (S.D.N.Y. 1993), *aff'd*, 9 F.3d 1537 (2d Cir. 1993); *Quoka v. City of W. Haven*, No. 02-7675, 2003 WL 21223422, at *2 (2d Cir. May 22, 2003).

      **B.**    **Even If Wendy's Did "Assign" the Lease to Slazer, Wendy's Still Is Not Liable to Flamingo**

Even if Wendy's did "assign" the lease to Slazer, Wendy's is still released from its obligations under the lease. The law is "well established that a general, unqualified assignment of one's rights, title and interest in a lease . . . divests the assignor of all rights and obligations existing thereunder..." *Singer v. Boychuk*, 194 A.D.2d 1049, 1051, 599 N.Y.S.2d 680, 682 (3d Dep't 1993); *see also Ull v. Lerner*, 308 A.D.2d 396, 396, 764 N.Y.S.2d 432, 433 (1st Dep't 2003); *Zinwell Co. v. Ilkovitz*, 144 N.Y.S. 815, 816-817 (1st Dep't 1913).

In the Termination Agreement, dated October 12, 2007, Wendy's and Slazer agreed that upon payment of the termination fee to Wendy's and Wendy's surrender of the premises, the "Lease and all right, title, and interest of [] Wendy's arising under or out of the Lease shall be

unconditionally and forever cancelled and terminated." (Yecies Aff., Ex. G.) The First Amendment of the Termination Agreement, executed by Wendy's and Slazer in January 2008, provided that Wendy's would vacate the premises, and a Slazer entity would "assume all obligations of the lease," including payment of rent and other expenses, for the period prior to closing. (Yecies Aff., Ex. M; Opp'n Br. at 7.) Even if it is assumed that the Termination Agreement and First Amendment somehow constitute an assignment, the language in the Termination Agreement rendering the lease "unconditionally and forever cancelled and terminated," and Slazer's agreement in the First Amendment to "assume all obligations of the lease" constitute a "general, unqualified assignment" of the lease, releasing Wendy's from any liability thereunder. *Boychuk*, 194 A.D.2d at 1051, 599 N.Y.S.2d at 682.

Moreover, the lease at issue in this case allows for assignment under two scenarios: either with Flamingo's prior written consent under § 25(A); or without Flamingo's consent under § 25(B), "if such assignment . . . is in connection with a reorganization  . . . and/or . . . disposition of all or any portion of [Wendy's] business . . . ." (Yecies Aff., Ex. E). Under the first scenario, with Flamingo's written consent, "such assignment … shall *not* release [Wendy's] from liability hereunder." (*Id.* at § 25(A) (emphasis added)). However, in the second scenario, § 25(B) contains no such provision of retained liability, and thus Wendy's would not be liable to Flamingo. (*Id.* at § 25(B)). Even Flamingo does not assert that Wendy's obtained prior written consent from Flamingo in connection with the purported assignment to Slazer, making § 25(A) inapplicable. Instead, Flamingo contends that Wendy's assigned the lease to Slazer pursuant to § 25(B), (*see* Shrem Aff. ¶ 7), so Wendy's has no continuing liability under the lease.

A tenant-assignor is also relieved from liability under the lease if there is "a release by the landlord or a surrender of the lease," which can be based on the landlord's conduct. *Mid Valley*

6

*Assoc., LLC v. Foot Locker*, No. 603069/02, 2005 WL 6237373 (N.Y. Sup. Ct. Apr. 12, 2005), *aff'd*, 28 A.D.3d 206 (1st Dep't 2006) (granting summary judgment to tenant where landlord's actions indicated its acceptance of assignee as the new tenant, thus releasing original tenant from its obligations under the lease). A surrender does not require a new lease but can be "based on the acceptance of the assignee as the tenant as shown by the actions of the landlord." *Foot Locker*, 2005 WL 6237373. Once the assignor surrenders the lease and the landlord accepts the surrender, the assignor is not liable for damages accruing after the date of surrender. *See 4400 Equities, Inc. v. Dhinsa*, 52 A.D.3d 654, 654, 826 N.Y.S.2d 512, 513 (2d Dep't 2008) (holding lease provision providing that tenant shall remain liable despite landlord's reentry inapplicable where "there has been a surrender of the lease and acceptance thereof," and relieving tenant from any liability under the lease).

Flamingo's actions after Wendy's ceased operations and vacated the premises, discussed in detail above, demonstrate Flamingo's acceptance of Wendy's surrender and its acceptance of Slazer, the assignee, as the new tenant. (*See also* Flamingo's Amended Statement of Undisputed Facts Pursuant to Local Rule 56.1 in Support of Its Cross Motion for Summary Judgment ("Pl.'s Rule 56.1 Stmt.") ¶¶ 47-48, 71-76, 81-84, 87, 89, 92, 94-98; Shrem Aff. ¶¶ 3, 5, 6, 9-11). Accordingly, upon the purported assignment of the lease to Slazer and Flamingo's subsequent acceptance, Wendy's was relieved from all obligations – including payment of rent, taxes, and expenses, as well as maintenance of the premises – under the former lease. *Gotlieb*, 871 F. Supp. at 155; *see also Altamuro v. Capoccetta*, 212 A.D.2d 904, 905, 622 N.Y.S.2d 155, 157 (3d Dep't 1995); *Dhinsa*, 52 A.D.3d at 654.

The cases cited by Flamingo are not to the contrary. *S. Bay Ctr. v. Butler, et al.*, 250 N.Y.S.2d 863, 864 (N.Y. Sup. Ct. 1964) is distinguishable because the lease in that case (a)

7

prohibited assignment without prior written consent of the landlord, unlike § 25(B) of the lease here; and (b) contained a provision that, in the event of an assignment, "'no such assignment shall be deemed a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained,'" a clause which is absent from § 25(B). *Gillette Bros. v. Aristocrat Rest.*, 239 N.Y. 87, 91-92 (1924), is of limited applicability as that court considered whether the *assignee* would be liable to the *assignor* for rent it had agreed to pay.

In *Ayen v. Schmidt*, 141 N.Y.S. 938, 940 (2d Dep't 1913), the court found that the plaintiff landlord could sue the defendant lessee *or* the defendant's assignee for rent "at his election, but could have but one satisfaction." The court explained, "[t]he lessor cannot receive rent *or the equivalent thereof* from the assignee and also recover from the lessee." *Id.* (emphasis added). Ruling for the defendant/lessee, the *Schmidt* court concluded that a payment made by the assignee which exceeded the amount of rent or other expenses due to the landlord constituted a release "from any further liability for rent under the assigned lease, and should thereby release the lessee and the assignor." *Id.* at 941. Similarly, in this case, it is not disputed that Flamingo received payments of approximately $51,000 per month from Slazer (nearly two times the rent that Wendy's would have paid when it was a tenant under the lease), which included real estate taxes and all other expenses associated with the Flamingo Property. (Wendy's Rule 56.1 Stmt. ¶¶ 33-35; *see also* Pl.'s Rule 56.1 Stmt. ¶¶ 71-76; Shrem Aff. ¶¶ 5, 6). It is also undisputed that Shrem, on behalf of Flamingo, received – and kept – a non-refundable down payment of $1,375,000 from Slazer on the property. (Wendy's Rule 56.1 Stmt. ¶ 67; Pl.'s Rule 56.1 Stmt. ¶¶ 61, 77-78; Shrem Aff. ¶ 6.) As the court found in *Schmidt*, the lessor "cannot receive rent or the equivalent thereof from the assignee [allegedly Slazer] and also recover from the lessee [Wendy's]." *Schmidt*, 141 N.Y.S. at 940. Slazer's monthly payments – which exceeded Wendy's

8

former rental payments – coupled with its down payment on the property, operated as a "release [of Wendy's] . . . from any further liability for rent under the assigned lease." *Id.* at 941. Holding otherwise, in the *Schmidt* court's own words, would operate as an "injustice." *Id.*

In *290-13 W. 48th Realty Corp. v. Rose Offset Printing Corp.*, 74 N.Y.S.2d 216, 218 (N.Y. Sup. Ct. 1947), the court declined to dismiss a complaint alleging that the defendant lessee and its assignee made structural alterations to the premises in violation of certain lease provisions. While the case recites that, "a bare assignment of a lease does not release the assignor from liability on the covenants of the lease," *id.* at 217, it is not applicable because the alleged assignment by Wendy's to Slazer was not a "bare assignment," but rather was a "general, unqualified assignment of one's rights, title and interest in a lease . . .," followed by a surrender and acceptance, which "divests [Wendy's] of all rights and obligations" under the lease. *Boychuk*, 194 A.D.2d at 1051; *see also Foot Locker*, 2005 WL 6237373.

### III. Flamingo's "Cross Motion" for Summary Judgment Is Untimely

Flamingo's insertion of a "cross motion" for summary judgment into its opposition brief should be rejected by this Court. On May 25, 2012, Flamingo filed a putative "Notice of Cross-Motion for Summary Judgment" and subsequently filed an Amended Memorandum of Law "In Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross Motion for Summary Judgment" on May 29, 2012. This "cross motion" is untimely. The Case Management Order entered by the Court on September 6, 2011 provides that "No motion for summary judgment may be served after the date the pre-trial order is due." By letter endorsed on February 16, 2012, the Court required the joint pre-trial order to be filed by April 30, 2012, which makes Plaintiff's subsequent "cross motion" filings on May 25th and May 29th untimely.

Moreover, pursuant to FED. R. CIV. P. 56(b), "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30

9

days after the close of all discovery." Pursuant to the above-referenced letter endorsed by the Court on February 16, 2012, the discovery deadline in this case was March 29, 2012, and the Court ordered that "there will be no further extensions." Nevertheless, Plaintiff attempted to file this "cross motion" approximately 60 days after the close of discovery – almost twice the allotted time under the Federal Rules.

Plaintiff has no valid basis for failing to comply with the Court's Orders and the Federal Rules of Civil Procedure and attempting to file a time-barred "cross motion." Plaintiff's attempt to submit a cross motion should be denied, and its Amended Memorandum of Law should be considered by the Court solely for what it is – an opposition brief to Wendy's timely motion for summary judgment. To the extent the Court accepts Flamingos' cross motion, it should be denied on the merits for the reasons discussed above.

## CONCLUSION

For the foregoing reasons, Wendy's respectfully requests that its motion for summary judgment be granted, that Plaintiff's "Cross Motion for Summary Judgment" be denied as untimely, and in the alternative, denied on the merits, that Plaintiff's claims be dismissed in their entirety and with prejudice, and that the Court award reasonable attorneys' fees to Wendy's as the prevailing party pursuant to § 37 of the lease, and such other and further relief as the Court deems just and proper.

DATED:  New York, New York
       June 26, 2012

/s/     Douglass B. Maynard
Douglass B. Maynard (DM-5555)
dmaynard@akingump.com
Jacqueline G. Yecies (JY-8496)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
*Counsel for Defendant Wendy's Old Fashioned Hamburgers of New York, Inc.*

10